**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

-----------------------------------------------------x

|  |  |  |
|---|---|---|
| **DENISE MERRIMON, BOBBY S.** | : | |
| **MOWERY, and all others similarly** | : | |
| **situated,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIV. NO.** |
| | : | |
| **vs.** | : | |
| | : | **CLASS ACTION COMPLAINT** |
| **UNUM LIFE INSURANCE COMPANY OF** | : | |
| **AMERICA, a subsidiary of** | : | |
| **UNUMPROVIDENT CORPORATION,** | : | |
| | : | |
| | : | |
| **Defendant** | : | |
| | : | |

-----------------------------------------------------x

1.      Plaintiffs Denise Merrimon and Bobby S. Mowery bring this action on behalf of themselves and all others similarly situated, against Defendant Unum Life Insurance Company of America, a subsidiary of UnumProvident Corporation (referred to hereafter as "Unum" or "defendant"), showing the Court the following:

**I.    NATURE OF THE ACTION**

2.      Plaintiffs brings this action on behalf of a class, the "ERISA Class" and a subclass, the "Maine PMI Subclass."   As explained in the paragraphs that follow, the practices complained of violate the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.* ("ERISA"), and the post-mortem interest ("PMI") provisions found in Maine's Insurance law, 24-A M.R.S.A. § 2436.

3.      This action involves claims brought pursuant to ERISA.   The action arises out of Unum's practice of investing death benefits due under ERISA-governed employee benefit plans

insured by Unum for Unum's own account without accounting fully to the beneficiaries for the profits Unum earns through such investments.   Plaintiffs assert this practice violates 29 U.S.C. § 1104(a)'s requirement that plan fiduciaries, such as Unum, discharge their duties with respect to ERISA plans solely in the interests of the plans' participants and beneficiaries, and 29 U.S.C. § 1106(b)'s prohibition against plan fiduciaries dealing with plan assets in their own interest or for their own account.   Plaintiffs bring this action pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to enjoin the practice and to obtain other appropriate equitable relief to redress Unum's violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106.

4.    This action also involves claims brought on behalf of the Maine PMI Subclass, pursuant to 24-A M.R.S.A. § 2436, which requires an insurer that "fails to pay an undisputed claim or any undisputed part of the claim when due," to pay "interest [on the claim] at the rate of 1½% per month [18% per annum] after the due date," defined as "30 days after proof of loss is received by the insurer and ascertainment of the loss is made."   Plaintiff Denise Merrimon brings this action to recover damages for Unum's breaches of contract and violations of Maine's PMI law and to obtain appropriate injunctive relief.

## II.    PARTIES – JURISDICTION

5.    Plaintiffs are residents of the State of Indiana.

6.    Unum Life Insurance Company of America is a subsidiary of UnumProvident Corporation. Unum maintains its principal place of business at 2211 Congress Street, Portland, Maine.   Unum is a life insurance company that conducts business, through its employees and agents, throughout the United States.   With respect to the allegations contained, *infra*, Unum is a fiduciary within the meaning of 29 U.S.C. § 1002 (21)(A), and may be sued pursuant to 29

2

U.S.C. § 1132(a)(3).   This Court has jurisdiction of this matter by virtue of 28 U.S.C. §§ 1331,

1337 (a) and 29 U.S.C. § 1132(e)(1).   This Court has supplemental jurisdiction of Plaintiff

Denise Merrimon's state law claims pursuant to 28 U.S.C. § 1367.   This Court also has

jurisdiction of this matter by virtue of 28 U.S.C. § 1332(d)(2) in that there is diversity of

citizenship and the amount in controversy exceeds $5,000,000.00.

7.     Venue is proper under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because

Unum may be found in this District.

8.     Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202 and, in

respect to the claims of the ERISA Class, 29 U.S.C. § 1132(a)(3).

### III.   THE UNUM SECURITY ACCOUNT SCHEME

9.     At all times relevant to this action, Unum issued group life insurance policies to

fund ERISA-governed employee welfare benefit plans ("plans"), including, but not limited to,

plans sponsored by St. Joseph's Hospital (Merrimon) and Peabody Investments Corp. (Mowery).

10.     The policies issued by Unum to fund ERISA plans and the benefits payable under

those plans are ERISA plan assets.   Plaintiffs and the ERISA Class were beneficiaries of such

policies and plans.

11.     With respect to death benefits of $10,000 or more due under the plans, instead of

paying the benefits to the beneficiary by tendering a check for the amount due or otherwise

transferring the funds to the beneficiary, Unum informs the beneficiary that the "money has been

deposited in a security account, which is a money market account set up in your name."

12.     Although Unum's communications state that beneficiaries' benefits have been

deposited into a Unum Security Account (also known as a UnumProvident Security Account),

Unum does not actually deposit any funds into the account.   Instead, Unum retains and invests the proceeds for its own account.   Only when a beneficiary's draft is presented for payment from a Unum Security Account does Unum deposit a corresponding amount of his or her death benefits into the Unum Security Account.

13.     Until a beneficiary draws a draft on his or her Unum Security Account and the draft is paid, Unum retains and uses the funds for its own benefit and not for the exclusive purpose of providing benefits to its beneficiaries.

14.     Unum earns more managing and investing the death benefits owed to the beneficiaries of the ERISA plans that it insures than it pays in interest in connection with the beneficiaries' Unum Security Accounts.

15.     Unum acts in a fiduciary capacity when it retains and invests death benefits due to beneficiaries of ERISA plans because such conduct involves the exercise of discretionary authority, responsibility and control in the administration and management of such plans, and the exercise of authority and control respecting the management and disposition of plan assets.   29 U.S.C. § 1002(21)(A).

16.     The profits that Unum earns investing the death benefits of the beneficiaries of the ERISA plans that Unum insures belong to the beneficiaries and not to Unum.

17.     Unum's Security Account practices as alleged above also violate 24-A M.R.S.A. § 2436 because Unum did not pay interest at the rate of 1½% per month (18% per annum) on death benefits that it retained for more than 30 days after the claim for death benefits was approved, and instead paid or credited interest to the Security Accounts that it established for Plaintiff Denise Merrimon and for members of the Maine PMI Subclass at the rate of 1% per annum.

18.         Unum violated 24-A M.R.S.A. § 2436 by failing to pay interest to Plaintiff Denise

Denise Merrimon and to members of the Maine PMI Subclass at the rate of 1½% per month

(18% per annum) beginning 30 days after their claims for death benefits were approved.

## IV. PLAINTIFFS' TRANSACTIONS

### IV. (a) Denise Merrimon

19.         Kenneth Merrimon was a participant in the St. Joseph's Hospital Plan insured by

Unum and his wife, Denise Merrimon, was the beneficiary of the life insurance benefit provided

under the St. Joseph's Hospital Plan.

20.         Kenneth Merrimon died on or about July 13, 2007.

21.         Sometime on or about July 13, 2007 and before August 3, 2007, Denise Merrimon

submitted a death benefit claim to Unum in accordance with the terms of the plan and policy.

22.         Mrs. Merrimon does not have a copy of the death benefit claim form submitted to

Unum nor did Unum produce the death benefit claim form when it provided the claim file on

June 16, 2010.   Unum did produce a document entitled "Group Insurance Summary of Benefits

Non-Participating" (copy attached as <u>Exhibit A</u>) which provides that the "Governing

Jurisdiction" is Maine.

23.         Unum approved Mrs. Merrimon's death benefit claim by two page letter dated

September 10, 2007 (copy attached as <u>Exhibit B</u>) that states in pertinent part:

> As the beneficiary of this policy, you are entitled to proceeds of
> $51,000.00, which represents the Group Life Insurance benefits
> plus any applicable interest payable under this policy.   This
> money has been deposited in a security account, which is a money
> market account set up in your name.
>
> Under separate cover, you will receive a packet of information that
> contains your bank drafts, which you may begin using
> immediately.   *You may write drafts for any amount, from a*

5

*minimum of $250.00 up to the entire account balance. You may leave your money in the security account for as long as you wish, and write drafts as you need them. There are no monthly service charges, and no charges for additional drafts.*

The packet includes an opening statement that will show the exact

amount in the account and the current interest rate for the account.

You will receive monthly statements that will reflect the interest

rate, which may change monthly, and the detail of your account's

transactions. Please read the terms and conditions on the opening

statement for more information about the account. If you have

any questions about the security account you may call a customer

service representative at 1-800-331-4631, Monday through Friday,

8:30 a.m. to 5:00 p.m., Eastern Time.

Letter from Unum to Denise Merrimon, September 10, 2007 (emphasis in original).

24. Mrs. Merrimon received an Initial Statement dated September 10, 2007, from

Unum (copy attached as <u>Exhibit C</u>) indicating that her "Opening Balance" was $51,000.00.

25. Unum did not transfer any funds to the Unum Security Account when it

established the account, despite the fact that Unum's September 10, 2007 letter (<u>Exhibit B</u>) stated

"[t]his money has been deposited in a security account." Indeed, Unum did not transfer any

funds to the Unum Security Account until sometime after November 5, 2007. *See* Mrs.

Merrimon's Unum Security Account statements for October 5, 2007 and November 5, 2007

(copies attached as <u>Exhibit D</u>), showing balances of $51,000.00 or more at all times from

September 10, 2007 to November 5, 2007.

26. Unum retained Mrs. Merrimon's death benefits until on or about November 13,

2007, when a draft for $51,036.34 drawn on her Security Account was submitted for payment. It was not until that time (on or about November 13, 2007) that Unum actually parted with control of Mrs. Merrimon's funds.

27.        Unum invested the death benefits owed to Plaintiff Denise Merrimon for its own account and not for the exclusive purpose of providing benefits to Plaintiff and earned more through such investments than the interest that it paid to Plaintiff in connection with her Security Account.

28.        The profits that Unum earned while investing Plaintiff Denise Merrimon's death benefits in a fiduciary capacity belong to Mrs. Merrimon and not to Unum.

29.        By failing to pay interest on the overdue claim from October 10, 2007 (30 days after the death benefit claim was approved on September 10, 2007) at the statutory rate of 18% per annum to the date that Unum actually parted with the money (on or about November 13, 2007), that it owed to Mrs. Merrimon, Unum violated 24-A M.R.S.A. § 2436 because, as the First Circuit observed in *Mogel v. UNUM Life Ins. Co. of America*, 547 F.3d 23, 26 (1st Cir. 2008), "[t]he difference between delivery of a check and a checkbook ... is the difference between UNUM retaining or UNUM divesting possession of Plaintiffs' funds."

**IV. (b) Bobby S. Mowery**

30.        Justin S. Mowery was a participant in the Peabody Investments Corp. Plan insured by Unum and his father, Bobby S. Mowery, was the beneficiary of the life insurance benefit provided under the Peabody Investments Corp. Plan.

31.        Justin Mowery died on or about September 23, 2007.

32.        Sometime after on or about September 23, 2007 and before January 4, 2008,

7

Bobby Mowery submitted a death benefit claim to Unum in accordance with the terms of the

plan and policy.

33.     Unum approved Mr. Mowery's death benefit claim by two page letter dated

January 4, 2008 (copy attached as <u>Exhibit E</u>) that states in pertinent part:

> As the beneficiary of this policy, you are entitled to proceeds of $62,300.00, which represents the Group Life Insurance benefits plus any applicable interest payable under this policy.   This money has been deposited in a security account, which is a money market account set up in your name.
>
> Under separate cover, you will receive a packet of information that contains your bank drafts, which you may begin using immediately.   You may write drafts for any amount, from a minimum of $250.00 up to the entire account balance.   You may leave your money in the security account for as long as you wish, and write drafts as you need them.   There are no monthly service charges, and no charges for additional drafts.
>
> The packet includes an opening statement that will show the exact
>
> amount in the account and the current interest rate for the account.
>
> You will receive monthly statements that will reflect the interest
>
> rate, which may change monthly, and the detail of your account's
>
> transactions.   Please read the terms and conditions on the opening
>
> statement for more information about the account.   If you have
>
> any questions about the security account you may call a customer
>
> service representative at 1-800-331-4631, Monday through Friday,
>
> 8:00 a.m. to 5:00 p.m., Eastern Time.

Letter from Unum to Bobby Mowery, January 4, 2008.

34.     Mr. Mowery received an Initial Statement dated January 4, 2008, from Unum

(copy attached as <u>Exhibit F</u>) indicating that his "Opening Balance" was $62,300.00.

35.     Unum did not transfer any funds to the Unum Security Account when it established the account, despite the fact that Unum's January 4, 2008 letter (<u>Exhibit E</u>) stated "[t]his money has been deposited in a security account."   Indeed, Unum did not transfer any funds to the Unum Security Account until sometime on or about January 15, 2008, and that transfer was for less than the $62,300.00 that Unum owed to Mr. Mowery.   Between on or about January 16, 2008 and on or about January 23, 2008, Unum made four additional transfers of funds to the Unum Security Account.   The sum of the five transfers was just slightly ($4.51) in excess of the $62,300.00 that Unum owed to Mr. Mowery.   *See* Mr. Mowery's Unum Security Account statements for January 6, 2008 and February 5, 2008 (copies attached as <u>Exhibit G</u>).

36.     Unum retained various portions of Mr. Mowery's death benefits until on or about January 23, 2008, when a draft for $12,315.12 drawn on his Security Account was submitted for payment. It was not until that time (on or about January 23, 2008) that Unum actually parted with control of the last portion of Mr. Mowery's funds.

37.     Unum invested the death benefits owed to Mr. Mowery for its own account and not for the exclusive purpose of providing benefits to Plaintiff and earned more through such investments than the interest that it paid to Plaintiff in connection with his Security Account.

38.     The profits that Unum earned while investing Mr. Mowery's death benefits in a fiduciary capacity belong to Mr. Mowery and not to Unum.

### V.   UNUM'S DUTIES IN CONNECTION WITH THE PLANS

39.     Unum was obligated to discharge its duties with respect to the plans "solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits

to participants and their beneficiaries," 29 U.S.C. § 1104(a)(1)(A)(i), and was prohibited from engaging in transactions prohibited by 29 U.S.C. § 1106, including "deal[ing] with the assets of the plan in [its] own interest or for [its] own account."

40.     To the extent that any language in an ERISA-governed plan or a group life insurance policy insuring such plan purports to authorize Unum to retain and invest benefits payable under the policy or plan for Unum's own account, Unum would be prohibited from doing so because ERISA requires plan fiduciaries to discharge their duties in accordance with a plan's terms only to the extent that its terms are consistent with ERISA, and because the investment of such benefits for Unum's account violates ERISA's fiduciary standards and prohibited transaction rules.

## VI.     PRACTICES COMPLAINED OF

### VI. (a) Violations of ERISA

41.     Unum breached its fiduciary duties and engaged in prohibited transactions by using and investing the death benefits due to Plaintiffs and the ERISA Class for its own account and not for the exclusive purpose of providing benefits to Plaintiffs and the ERISA Class without fully accounting to Plaintiffs and the ERISA Class for the monies it earned through such investments.

42.     Unum has been unjustly enriched in the amount of the profits it has earned through the above-described practices.   Unum holds the profits it has earned through such practices in constructive trust for the benefit of Plaintiffs and the ERISA Class and should be ordered to account for and disgorge such profits to Plaintiffs and the ERISA Class.

### VI. (b) Violations of 24-A M.R.S.A. § 2436

43.     Unum's policy and practice is to underpay the post-mortem interest on death benefits required by Maine law.

44.     Maine Insurance Law, 24-A M.R.S.A. § 2436, provides in pertinent part:

> 1.   A claim for payment of benefits under a policy or certificate of insurance delivered or issued for delivery in this State is payable within 30 days after proof of loss is received by the insurer and ascertainment of the loss is made[.]   ...   A claim that is neither disputed nor paid within 30 days is overdue.

> 3.   If an insurer fails to pay an undisputed claim or any undisputed part of the claim when due, the amount of the overdue claim or part of the claim bears interest at the rate of 1½% per month [18% per annum] after the due date.

24-A M.R.S.A. § 2436, subsections 1 and 3.

45.     Unum employed Security Accounts to delay the actual cash outflow.   Money was not paid to beneficiaries until their drafts were presented for payment.   Until such time that drafts were presented for payment, Unum's Security Accounts were nothing more than a promise to pay.   As the First Circuit observed in *Mogel,* 547 F.3d at 27, "the euphemistically named 'Security Account,' accompanied with a checkbook, was no more than an IOU which did not transfer the funds to which the beneficiaries were entitled."

46.     Unum has avoided paying Plaintiff Denise Merrimon and the Maine PMI Subclass large amounts of interest to which Plaintiff and the Maine PMI Subclass are entitled under Maine law.

## VII.   CLASS ALLEGATIONS

47.     Plaintiffs bring this action on behalf of a class, the "ERISA Class," and a subclass,

11

the "Maine PMI Subclass," pursuant to the provisions of Federal Rules of Civil Procedure 23 (a),

(b)(1) and/or (b)(3).

48.     Plaintiffs and the ERISA Class members that they seek to represent are

beneficiaries of so-called "CXC policies," issued by Unum containing the following payment

language:

> (a) "If you or your dependent's life claim is at least $10,000, Unum
> will make available to the beneficiary a retained asset account (the
> Unum Security Account).   RETAINED ASSET ACCOUNT is an
> interest bearing account established at an intermediary bank in the
> name of your beneficiary, as owner.   Payment for the life claim
> may be accessed by writing a draft in a single sum or drafts in
> smaller sums.   The funds for the draft or drafts are fully
> guaranteed by Unum;" or

> (b) any other substantially similar operative payment language
> expressly providing for the distribution of death benefits via a
> retained asset account, irrespective of the nomenclature used to
> refer to such account including, but not limited to, "Money Market
> Account," "Retained Asset Account" and/or "Unum Security
> Account."

49.     The ERISA Class consists of all persons who satisfy each of the following

criteria:

> a.     At any time after the date six years immediately preceding the filing of
>
> this complaint, and continuing to the present;
>
> b.     They were beneficiaries under ERISA-governed employee welfare benefit
>
> plans that were insured by so-called "CXC" group life insurance policies
>
> issued by Unum; and

      c.      For whom Unum established a Security Account in connection with the settlement of their claim for death benefits.

50.     Plaintiff Denise Merrimon and the Maine PMI Subclass members that she seeks to represent are beneficiaries of group life insurance policies issued by Unum wherein the "Governing Jurisdiction" is Maine.

51.     The Maine PMI Subclass consists of all persons who satisfy each of the following criteria:

      a.      At any time after the date six years immediately preceding the filing of this complaint, and continuing to the present;

      b.      They were beneficiaries under ERISA-governed employee welfare benefit plans that were insured by so-called "CXC" group life insurance policies issued by Unum wherein the "Governing Jurisdiction" is Maine; and

      c.      For whom Unum established a Security Account in connection with the settlement of their claim for death benefits; and

      d.      Under which Unum did not pay post-mortem interest at the rate of 1½% per month (18% per annum) on funds retained by Unum for more than 30 days after the death benefit claim was approved.

52.     Excluded from the class and the subclass are Unum and UnumProvident Corporation, their directors, officers, employees, parents, affiliates and subsidiaries, their successors, agents, legal representatives, heirs and assigns, and any persons controlled by any excluded person.

53.     The class and the subclass are so numerous that joinder of all members is

impractical.   The class and the subclass are each composed of more than 10,000 class members.

54.   The named Plaintiffs' claims are typical of the claims of the ERISA Class and Plaintiff Denise Merrimon's claims are typical of the claims of the Maine PMI Subclass.   All of the claims are based on the same factual and legal theories.

55.   Plaintiffs will fairly and adequately protect the interests of the ERISA class and Plaintiff Denise Merrimon will fairly and adequately protect the interests of the Maine PMI Subclass.   They are committed to litigating this matter vigorously.   Plaintiffs have retained counsel experienced in handling class claims involving unlawful insurance and business practices and ERISA violations.   Neither Plaintiffs nor Plaintiffs' counsel has any interest that might cause them not to pursue this action vigorously.

56.   Class certification under Fed. R. Civ. P. 23(b)(1) is appropriate for the ERISA Class and the Maine PMI Subclass because prosecuting separate actions by or against individual class members would create a risk of either:

a.     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

b.     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

57.   Class certification under Fed. R. Civ. P. 23(b)(3) is appropriate for the ERISA Class because there are numerous questions of law and fact which are common to the ERISA

14

Class and which predominate over any questions affecting individual members of the Class, including, without limitation, the following:

      a.     Whether Unum engaged in the practices complained of;

      b.     Whether Unum was acting in a fiduciary capacity when it engaged in the practices complained of;

      c.     Whether the practices complained of violate 29 U.S.C. § 1104:

      d.     Whether the practices complained of violate 29 U.S.C. § 1106;

      e.     The amount by which Unum was unjustly enriched through the practices complained of;

      f.     The equitable relief appropriate to redress Unum's violations of ERISA, including whether Unum should be ordered to cease the practice and disgorge the profits it has earned through the practice.

58.     Indeed, the only individual question would appear to be the amount of disgorged profits attributable to each ERISA Class member, a matter which can be determined through use of Defendant's computers and records.

59.     Class certification under Fed. R. Civ. P. 23(b)(3) is appropriate for the Maine PMI Subclass because there are numerous questions of law and fact which are common to the Maine PMI Subclass and which predominate over any questions affecting individual members of the Class, including, without limitation, the following:

      a.     Whether Unum engaged in the practices complained of;

      b.     Whether the practices complained of violate 24-A M.R.S.A. § 2436; and

      c.     The injunctive relief appropriate to redress Unum's violations of Maine Insurance

Law, including whether Unum should be ordered to cease the practices
complained of.

60.     Indeed, the only individual question would appear to be the amount of damages
attributable to each Maine PMI Subclass member, a matter which can be determined through use
of Defendant's computers and records.

61.     Class certification of the claims of the ERISA Class and the Maine PMI Subclass
under Fed. R. Civ. P. 23(b)(3) is appropriate in this action because a class action is superior to
other available methods for the fair and efficient adjudication of this controversy, in that:

a.      the effect of defendant's illegal practices on most individual class members is
        small, while establishing the illegality of the practices complained of -- for the
        ERISA Class, violations of the exclusive benefit rule found in ERISA § 404 and
        the prohibited transaction rules found in ERISA § 406, and for the Maine PMI
        Subclass, violations of 24-A M.R.S.A. § 2436 -- is complex, so that prosecution
        of individual actions is impractical and not economically feasible;

b.      by contrast, the illegal profits obtained by Defendant as a result of its unlawful
        practices are enormous;

c.      in the absence of the class action device, Plaintiffs and members of the class and
        the subclass would be left without a remedy for the wrongful acts alleged, and
        Defendant would be unjustly enriched;

d.      the prosecution of separate lawsuits by individual members of the classes would
        create the risk of inconsistent adjudications with respect to individual class
        members, which would establish incompatible standards of conduct for

Defendant, making concentration of the litigation concerning this matter in this

Court desirable;

e.      no unusual difficulties are likely to be encountered in the management of this

action as a class action.

## VIII.   AS AND FOR A FIRST CAUSE OF ACTION
## SOUNDING IN VIOLATIONS OF ERISA

62.     Plaintiffs incorporate the above allegations into this cause of action.

63.     By its actions as described herein, Unum violated its fiduciary duty under 29

U.S.C. § 1104(a) to act solely in the interest of plan participants and beneficiaries and for the

exclusive purpose of providing benefits to participants and their beneficiaries.

64.     By its actions as described herein, Unum engaged in transactions prohibited under

29 U.S.C. § 1106(b)(1) by dealing in ERISA plan assets in its own interest and for its own

account.

## IX.   AS AND FOR A SECOND CAUSE OF ACTION
## SOUNDING IN BREACH OF CONTRACT

65.     Plaintiffs incorporate the above allegations into this cause of action.

66.     Post-mortem interest on death benefits is to be computed and paid in accordance

with the state law mandated by the choice of law provision in the contract.   Here, Unum has

invoked the laws of Maine by selecting Maine as the "Governing Jurisdiction" in the insurance

contracts.

67.     Unum breached the contracts of insurance of which the Plaintiff Denise Merrimon

and the Maine PMI Subclass members were third-party beneficiaries.

68.     There are no conditions precedent to Unum's obligation to pay the full amount of

17

post-mortem interest required in said contracts by virtue of the Maine insurance law.

Alternatively, Plaintiff Denise Merrimon and all Maine PMI Subclass members fulfilled all such

conditions.

69.     Unum breached the contracts of Plaintiff Denise Merrimon and all Maine PMI

Subclass members by paying less post-mortem interest than was required by Maine law.

70.     Plaintiff Denise Merrimon and each Maine PMI Subclass member suffered

pecuniary injury as a result of these breaches of contract in an amount to be proved at trial.

## X.   AS AND FOR A THIRD CAUSE OF ACTION
## SOUNDING IN VIOLATIONS OF 24-A M.R.S.A. § 2436

71.     Plaintiffs incorporate the above allegations into this cause of action.

72.     By reason of Maine Insurance Law, 24-A M.R.S.A. § 2436, Plaintiff Denise

Merrimon and each Maine PMI Subclass member are entitled to "interest at the rate of 1½% per

month [18% per annum] after the due date" on each death benefit claim, or part thereof, not paid

"within 30 days after proof of loss is received by the insurer and ascertainment of the loss is

made."

73.     Unum violated 24-A M.R.S.A. § 2436 by paying less post-mortem interest than

was required by the statute.

74.     Plaintiff Denise Merrimon and each Maine PMI Subclass member suffered

pecuniary injury as a result of these violations of Maine law in an amount to be proved at trial.

WHEREFORE, Plaintiffs request that the Court grant the following relief in their favor

and in favor of the Class and the Subclass and against Unum:

a)      That the Court enter an order (i) certifying the claims of the named Plaintiffs and

all other persons similarly situated as a class action on behalf of the ERISA Class, (ii) certifying

the claims of Plaintiff Denise Merrimon and all other persons similarly situated as a class action

on behalf of the Maine PMI Subclass, (iii) appointing Plaintiffs as the class representatives of the

ERISA Class, (iv) appointing Plaintiff Denise Merrimon as the class representative of the Maine

PMI Subclass, and (v) appointing Plaintiffs' counsel as counsel for the Class and the Subclass;

b)      That the Court declare that (i) Unum has violated ERISA; (ii) Unum has been

unjustly enriched as a result of its violations of ERISA; (iii)   Unum is holding in constructive

trust all of the monies that it earned through its violations of ERISA; (iv) Plaintiffs and the

ERISA Class are entitled to an order directing Unum to disgorge all of the monies that it earned

through its unlawful practices; (v) Unum has breached the contracts of Plaintiff Denise

Merrimon and the Maine PMI Subclass members by paying less post-mortem interest than

required by Maine law; (vi) Unum has violated 24-A M.R.S.A. § 2436; and (vii) Plaintiff Denise

Merrimon and the Maine PMI Subclass are entitled to an order directing Unum to pay damages;

c)      That the Court order Unum to disgorge all of the illicit monies that it has earned

from its violations of ERISA and thereafter distribute those monies equitably to the ERISA

Class;

d)      That the Court order Unum to pay damages to the Maine PMI Subclass for its

violations of Maine law;

e)      That the Court issue appropriate injunctive relief enjoining Unum's violations of

ERISA and Maine law;

f)      That the Court award attorney's fees, expenses, and costs as allowed by law; and

g)      That Plaintiffs, the Class and the Subclass have any and all such further relief that

this Court may deem just and proper.

Dated: October 29, 2010

Respectfully submitted,


/s/ *Andrea Bopp Stark*
Andrea Bopp Stark
MOLLEUR LAW OFFICE
419 Alfred Street
Biddeford, Maine 04005-3747
(207) 283-3777
(207) 283-4558 (fax)

Stuart T. Rossman
Charles M. Delbaum
Arielle Cohen
THE NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
(617) 542-8010
(617) 542-8028 (fax)

John C. Bell, Jr.
Leroy W. Brigham
BELL & BRIGHAM
457 Greene Street
P.O. Box 1547
Augusta, Georgia 30903-1547
(706) 722-2014
(706) 722-7552 (fax)

Jeffrey G. Casurella
LAW OFFICES OF JEFFREY G. CASURELLA
400 Interstate N. Pkwy. Suite 310
Atlanta, Georgia 30339
(770) 858-1660
(770) 858-1665 (fax)
Helen Cleveland
CLEVELAND GAMBLE GILBREATH LLC
Resurgens Plaza, Suite 2270
945 East Pace Ferry Road
Atlanta, Georgia 30326
(404) 760-2792
(404) 941-2977 (fax)

M. Scott Barrett
BARRETT & ASSOCIATES
320 West 8th St., Suite 100
P.O. Box 5233
Bloomington, Indiana 47407-5233
(812) 334-2600
(812) 336-5615 (fax)

Fred Schultz
GREENE & SCHULTZ
320 West 8th Street, Suite 100
Bloomington, Indiana 47404
(812) 336-4357
(812) 336-5615 (fax)

**Attorneys for Plaintiffs**

(*Pro Hac Vice* applications to be filed for out of state counsel)

Exhibit Summary and Notes

Exhibit A        Group Insurance Summary of Benefits Non-Participating - St. Joseph's Hospital

Exhibit B        Two page letter dated September 10, 2007 from Unum to Denise Merrimon

Exhibit C        Denise Merrimon's Initial Statement dated September 10, 2007

Exhibit D        Denise Merrimon's Unum Security Account statements for October 5, 2007 and November 5, 2007

Exhibit E        Two page letter dated January 4, 2008 from Unum to Bobby Mowery

Exhibit F        Bobby Mowery's Initial Statement dated January 4, 2008

Exhibit G        Bobby Mowery's Unum Security Account statements for January 6, 2008 and February 5, 2008